## PEOPLE *v.* KENYON.

1. INDICTMENT AND INFORMATION—PLEADING—ILLEGAL PRACTICE OF MEDICINE.

>   An information under Act No. 368, Pub. Acts 1913, § 7, charging respondent with practicing medicine without a license, is not defective because exceptions contained in the following section were not set out, since, such exceptions not being in the enacting clause of the act, are matters of defense.

2. CRIMINAL LAW—INSTRUCTIONS—BURDEN OF PROOF—REQUESTS TO CHARGE.

>   An instruction that the defendant was presumed to be innocent of the charge brought against him, and that such presumption abides with him throughout the trial; that the arrest raised no presumption of guilt; that the burden of proof of establishing the guilt of accused was upon the people; and that to be justified in rendering a verdict of guilty the jury should be convinced beyond a reasonable doubt that every element of the offense charged had been proved, *held*, to fully protect the rights of defendant and the refusal to give a request in the language submitted was not error.

3. SAME — WITNESSES — CROSS-EXAMINATION — EVIDENCE — CREDIBILITY—IMPEACHMENT.

>   Where defendant testified, on direct examination, that he had never held himself out as a physician or surgeon, letters and a card holding him out as a physician, although dated long before the date of the offense charged, were admissible, on cross-examination, as bearing upon his credibility.

4. SAME—EVIDENCE—WITNESSES—REBUTTAL.

>   In view of such testimony by defendant, it was not error to admit the testimony of the person to whom such letters were written relating the circumstances that occurred at the time.

5. SAME—EVIDENCE—REBUTTAL.

>   In a prosecution for practicing medicine without a license, where defendant's counsel had intimated that a claim might be made that defendant resided in another county,

it was not error to show by the deputy county clerk that
defendant was not registered in such county, even though
such witness' name was not indorsed on the information;
such testimony being in effect rebuttal and being so treat-
ed by the court.

Exceptions before judgment from Calhoun; North,
J. Submitted April 12, 1918. (Docket No. 127.) De-
cided June 3, 1918.

Levi Kenyon was convicted of practicing medicine
in violation of Act No. 368, Pub. Acts 1913. Affirmed.

*Howard W. Cavanagh,* for appellant.

*Adrian F. Cooper,* Prosecuting Attorney, and *James
Cleary,* Assistant Prosecuting Attorney, for the people.

KUHN, J. The information in this case charges
that the respondent,—

"heretofore, to wit: on the 1st day of July, A. D.
1915, and on divers other days between that day and
the 8th day of December, 1916, at the city of Battle
Creek in the county of Calhoun aforesaid, did then
and there practice medicine and surgery and did ad-
vertise and hold himself out to the public as being
able to heal, cure and alleviate human ailments and
diseases, he the said Levi Kenyon not being then and
there the lawful possessor of a certificate of registra-
tion or license issued under and pursuant to Act No.
237 of the Public Acts of 1899 as amended, and he
the said Levi Kenyon not having then and there com-
plied with the provisions of Act No. 368 of the Public
Acts of 1913."

At the outset of the trial respondent's attorney made
a motion to quash the information on the ground that
it failed to allege that respondent was not within any
of the exceptions to the operation of the act, and fur-
ther  that it was bad for duplicity in that it stated
more than one offense. This motion was denied by the
court, but the prosecutor was compelled to elect which

of the two charges stated in the information he would proceed upon. At the conclusion of his case he elected the charge of practicing medicine without a license. The prosecution showed that Mr. Kenyon was not registered in Eaton, Calhoun or Barry counties as a physician, and also introduced the testimony of a number of witnesses to the effect that he had not merely furnished medicine, but had given treatments to a number of people in Battle Creek and elsewhere, the treatments consisting principally in rubbing on some sort or salve or oil, and occasionally giving a powder to take internally. Before giving a treatment he would "go into a trance," as the witnesses expressed it, claiming to be under the guidance and control of an Indian spirit, who would talk to him and tell him whether or not he could cure the patient and also what to do to effect the cure. In a number of instances it was shown that he stated positively that he could cure the patients. These witnesses stated that they had gone to him for medicine or treatment because they had heard him spoken of highly by others whom he had treated; that they had seen no advertisement nor anything with the title "doctor" used in connection with his name, though they were in the habit of calling him Dr. Kenyon. During the cross-examination of Mr. Kenyon, he identified a number of letters written by his wife for him during the years 1913 and 1914 to a Miss Carrie Holmes, which were signed "Dr. Levi Kenyon," the envelopes of which bore the return card, "Dr. Levi Kenyon, Bellevue, Mich.," which letters were received in evidence, as was also a printed card which he identified, reading as follows:

"CLAIRVOYANT DOCTOR. I diagnose Cases Anywhere in the United States free of Charge.

"DR. LEVI KENYON,

"Bell Phone 50 3-4     "Bellevue, Michigan.

"R. F. D. No. 4."

The respondent endeavored to show that during the period set forth in the information he did not practice medicine and did not hold himself out at all to cure or alleviate human ailments, but simply sold herbs, roots, and ointments prepared by himself, which might, if used, be of benefit to afflicted human beings. That during the period in question he did not advertise nor hold himself out to cure diseases, nor in any way violate the section of the act in question. The jury returned a verdict of guilty, and the case is before us on exceptions before sentence.

The questions raised by the assignments of error which are particularly argued in the brief of counsel and urged upon our attention, are thus stated:

1st. The permitting of information to stand without the exceptions of the statute being mentioned therein.

2d. The refusal of the court to charge as to the burden of proof.

3d. The admission of the letters and the card that were dated a long time prior to the time that was mentioned in the information.

4th. Allowing the witness Andrus to testify, his name not having been indorsed on the information, and no showing made as to why, and his testimony being clearly a part of the main case.

1. The enacting clause of the act in question (2 Comp. Laws 1915, § 6724 *et seq.*), which makes the commission of the charge here preferred a misdemeanor, is section 7 of the act. The exceptions which respondent's counsel urges should have been incorporated in the information charging the offense, are not contained in the enacting clause, but are found in a subsequent section, viz., section 8. The argument is made that sections 7 and 8 are so closely allied that it is only fair to respondent that the exceptions should have been enumerated in the information, so that the accused might have been fully informed as to the na-

ture and cause of the accusation against him. The rule, however, in this State is well established that in declaring on a statute where there is an exception in the enacting clause, the pleader must negative the exception, but where there is no exception in the enacting clause, but an exemption in the proviso to the enacting clause or in a subsequent section of the act, it is a matter of defense and must be shown by the defendant. In support of this rule, attention is called to the following cases: *Myers* v. *Carr,* 12 Mich. 63; *People* v. *Phippin,* 70 Mich. 6; *People* v. *Pendleton,* 79 Mich. 317; *People* v. *Curtis,* 95 Mich. 212; *People* v. *Allen,* 122 Mich. 123; *People* v. *Shuler,* 136 Mich. 161.

2. Fault is found because the trial judge did not give the following request to charge:

"I charge you that the burden of establishing these things, as above set forth, is upon the people, who are represented by the prosecuting attorney, and that during the whole trial that burden never shifts, but is always upon the prosecuting attorney. In other words, the defendant here is not called upon at any time during the trial to prove that he is innocent of this charge, for, as a matter of law, the defendant, Levi Kenyon, comes into this court and stands before you, gentlemen of the jury, as innocent of this charge and his being arrested and brought into court is not to be in any way used by you as an inference of guilt."

The court did charge, with reference to the presumption of innocence, as follows:

"The defendant in this case is presumed to be innocent of the charge brought against him here, and that presumption of innocence abides with him throughout the entire trial of the case until he is proven beyond a reasonable doubt by the testimony given to be guilty of the charge brought against him. The mere fact that he is here on trial, that he has been arrested and brought into court by the ordinary criminal process should not be considered by you as in any way to

raise the presumption that he is guilty. The burden of establishing the guilt of the accused is upon the people, and in order to justify you as jurors in rendering a verdict of guilty it must be proven beyond a reasonable doubt that this defendant has committed the offense charged here and at the time charged, and as I have said to you, it is necessary for you to decide in your deliberations whether or not that has been shown, beyond a reasonable doubt. And it has been said that a juror is satisfied beyond a reasonable doubt as to a matter in controversy when after a full and fair consideration of all the testimony given in a case he can say that he has an abiding conviction to a moral certainty that the charge made has been established as having been committed by the accused. And in that connection you should bear in mind that it is essential that each element of the offense charged must be proven by that measure of proof beyond a reasonable doubt."

We are of the opinion that the charge as given fully protected the rights of respondent and was a proper statement of the law with reference to the burden of proof. There was no error in the refusal of the court to give the request as preferred.

3. While the respondent was on the witness stand, on direct examination, he was interrogated by his counsel as follows:

"*Q.* Have you ever held yourself out as being a physician?
"*A.* No, sir.
"*Q.* Or a surgeon?
"*A.* No, sir, never in the world."

The exhibits in question were introduced on the cross-examination of the respondent. Some question is raised whether or not proper objection was made to the introduction of them so that their admission can be relied upon as error in this court. It will be unnecessary to pass upon this question, as we are clearly of the opinion that it was not error to allow this cross-examination and the introduction of the letters

as bearing upon the credibility of the respondent. See *People* v. *Pyckett,* 99 Mich. 613; *Kingston* v. *Railway Co.,* 112 Mich. 40.

It is further contended that the testimony of the witness Carrie Holmes, to whom the letters in controversy were written, was admitted under a wrong theory and was prejudicial error. She was allowed to relate certain circumstances that occurred at the time these letters were written, and it is the claim of respondent that this testimony was introduced as a part of the direct case under the guise of rebuttal evidence. We have examined this testimony with some care, but in view of the statement made by respondent while on the stand in his direct examination, that he had never diagnosed a case of any person coming to him and that he had never made a fixed charge for his remedies, we are of the opinion that no prejudicial error was committed by the court in allowing this testimony.

4. The name of the witness Andrus was not indorsed upon the information. At the time this testimony was taken, the following occurred:

*"Mr. Cavanagh:* I object to this, this man's name is not on the information.

*"Mr. Cleary:* No, it is not on the information and I did not want to bring him in until the rebuttal. But you just told me you had no objections.

*"Mr. Cavanagh:* I do object. His name should be on the information even if it is in rebuttal.

*"Mr. Cleary:* I just want to show that the defendant is not registered.

*"The Court:* Of course if it is in rebuttal, it is not necessary to have his name indorsed, but I do not see at this time how that would be material.

*"Mr. Cleary:* It is in anticipation of the defense.

*"Mr. Cavanagh:* My only objection to it is that his name is not on the information.

*"The Court:* Well, a rebuttal witness is not supposed to be indorsed on the information, so you may take the testimony.

"*Q.* What is your name?

"*A.* Roy Andrus.

"*Q.* What is your business?

"*A.* Deputy county clerk of Barry county.

"*The Court:* We might state it this way, I suppose the only way in which this testimony could be relevant or material would be if the defendant should claim to be registered in Barry county.

"*Mr. Cleary:* That is it.

"*The Court:* Now, if you will state that he does not make any claim in this case during this period that is covered by the information to be registered in Barry county, you need not go into it.

"*Mr. Cavanagh:* Well, I think he states he lived in Barry county.

"*The Court:* The testimony may be taken.

"*Q.* As such deputy county clerk, have you the registers of physicians registered in Barry county?

"*A.* I have.

"*Q.* Can you tell the jury whether or not Levi Kenyon is registered physician in Barry county?

"*A.* He is not.

"*Mr. Cavanagh:* There is no cross-examination and I move to strike the testimony out for the reason that it is not rebuttal and that his name is not on the information and that it is a part of the main case.

"*The Court:* I will reserve the ruling on the motion, and whether or not that it will be stricken out will be determined after the defense had concluded its case."

It was not incumbent upon the people to prove that the respondent had not registered in Barry county, and this testimony was simply received out of order, in anticipation of the defense that respondent might claim that he lived in Barry county. It will be noted from the colloquy between the court and counsel above set forth that counsel for respondent intimated that the claim would probably be made that he did live in Barry county, and thereupon the court allowed the witness to testify. In view of the situation thus presented, the testimony was in effect rebuttal testimony and was treated as such by the court. We are not of

the opinion that the respondent was prejudiced by the mere fact that the witness was called out of order, as it would clearly have been proper to call him in rebuttal, in view of the claim made by respondent as to his residence.

We are unable to find error in this record which would warrant a reversal of the case, and therefore affirm the conviction and direct the trial court to proceed to judgment.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.